| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

TONIA GORE,

          **Plaintiff,**

    **v.**

THE BUCCANEER, INC.

          **Defendant.**

_____

**1:20-cv-00011**

**TO:**    **Pamela L. Colon, Esq.**
        **Robert J. Kuczynski, Esq.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's "Motion To Compel Arbitration And Stay Proceedings" (ECF No. 6), Plaintiff's Response (ECF No. 13), and Defendant's Reply (ECF No. 19). Having considered the parties' arguments, the Court will grant the motion.

## I.    BACKGROUND

This is a personal injury action in which Plaintiff alleges that, on June 28, 2019, while she was a guest at The Buccaneer ("Defendant"), she fell down stairs while walking on the premises. (ECF No. 1). Defendant claims that when Plaintiff checked in at the hotel, she signed an arbitration agreement that covers this particular type of lawsuit. (ECF No. 7 at 1-2). That arbitration agreement states as follows:

> Any dispute, controversy or claim of any kind whatsoever, including but not limited to torts allegedly resulting in injuries while on the hotel property, and including also all disputes about the validity of this arbitration clause or the breach thereof, shall be settled by a mutually agreed to local arbitrator and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The parties agree that all decisions of the Arbitrator shall be conclusive and binding on all parties and that each side in

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 2

> any dispute will bear half the costs involved in any arbitration.  This arbitration agreement covers all claims as set forth herein between the undersigned and The Buccaneer, Inc. and/or its agents, directors, officers and employees and will continue from the time of the acknowledgement of this agreement by the undersigned until it is otherwise terminated in writing by the agreement of the parties.  In the event a court or arbitrator declares that the arbitration clause is not enforceable or does not cover the claim in question, then the parties agree that the matter will proceed in court as a non-jury trial as EACH PARTY EXPRESSLY WAIVES ITS RIGHT TO A JURY TRIAL IN ANY SUCH PROCEEDING.

(ECF No. 7-1).

In the instant motion, Defendant seeks a court order compelling arbitration and a stay of this lawsuit until arbitration is complete.  (ECF No. 7 at 5).  Plaintiff argues that 1) there was no contract between Plaintiff and Defendant, and 2) even if the arbitration clause is otherwise enforceable, it is unconscionable.  (ECF No. 13 at 3-7).

## II.    APPLICABLE LEGAL PRINCIPLES

### 1.  Federal Arbitration Act

Under the Federal Arbitration Act ("FAA"), a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4; *accord Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (observing that an independent basis for federal jurisdiction over a dispute is required and that the FAA is not itself a basis for federal jurisdiction).  Here, this Court has jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states.  This Court thus has jurisdiction to decide Defendant's motion.

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 3

The FAA applies to a contract "evidencing a transaction involving commerce to settle by ... or submit to arbitration" any controversy arising out of that contract. 9 U.S.C. § 2. Further, the FAA establishes a "strong federal policy in favor of resolving disputes through arbitration." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (quotation marks omitted). Thus, "the Act [*i.e.*, the FAA], both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate" whenever possible. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that courts are required to resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration"). In addition, the FAA requires that written arbitration agreements be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

Accordingly, prior to compelling arbitration pursuant to the FAA, a court must first conclude that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220. A "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *In re Pharm. Benefit Managers*

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 4

*Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (quotation marks omitted); *see* 9 U.S.C. §§ 3-4.

### 2.  Standard for Deciding a Motion to Compel Arbitration

When considering a motion to compel arbitration, a district court must apply either the standard used to resolve motions to dismiss or that used to resolve motions for summary judgment.  Where "it is apparent" based on the complaint and supporting documents "that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a FED. R. CIV. P. 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quotation marks omitted).  In other words, "[m]otions to compel arbitration are reviewed under Rule 12(b)(6) '[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or ... documents relied upon in the complaint).'" *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015).  Conversely, where arbitrability is not apparent, or if the party seeking to avoid arbitration has put forth sufficient additional facts to place the agreement to arbitrate in issue, a motion to compel arbitration should be considered under a FED. R. CIV. P. 56 summary judgment standard, after providing the parties the opportunity for limited discovery on the issue of arbitrability.  *Id.*  Defendant has provided the Court with a copy of the arbitration agreement.  Thus, the Court will review Defendant's motion under a Rule 12(b)(6) standard.

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 5

### 3. Virgin Islands Law

In determining whether to compel arbitration, courts rely on the principles of applicable state law. *See Golden Gate Nat'l Senior Care, LLC v. Addison*, Case No. 14-MC-0421, 2014 WL 4792386, at *13 (M.D. Pa. Sept. 24, 2014) (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)). "The Virgin Islands Supreme Court has not expressly adopted the common law rule for formation of a valid contract." *Valentin v. Grapetree Shores*, Case No. SX-11-CV-305, 2015 WL 13579631, at *3 (V.I. Super. Ct. June 30, 2015). "However, the basic elements for what constitutes a valid contract are so widely accepted and fundamental to the practice of law in the Virgin Islands and every other United States jurisdiction that maintaining these elements is unquestionably the soundest rule for the Virgin Islands."[1] *Id.* (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014)). Thus, "[i]n the Virgin Islands, a valid contract requires a 'bargain in which there is a mutual assent to the exchange, and consideration.'" *Id.; accord* S*unshine Shopping Ctr., Inc. v. LG Elecs. Panama, S.A.*, Case No. 2015-0041, 2018 WL 4558982, at *7 (D.V.I. Sept. 21, 2018) (applying Virgin Islands law). "Assent is not measured by subjective intent, but by outward expression." *Valentin*, 2015 WL 13579631, at *3. Further, "[i]n an

---

[1] Where prior precedent is "lacking on a common law rule, courts in the Virgin Islands must conduct what has become known as a "*Banks* analysis" to determine the applicable law in the Virgin Islands." *Halliday v. Great Lakes Ins. SE*, Case No. 3:18-CV-00072, 2019 WL 3500913, at *5 (D.V.I. Aug. 1, 2019). The Court must first "ascertain[ ] whether any Virgin Islands courts have previously adopted a particular rule, then identify[ ] the position taken by a majority of courts from other jurisdictions, and finally determin[e] which approach represents the soundest rule for the Virgin Islands." *Gov't of Virgin Islands v. Connor*, Case No. 2013-0095, 2014 WL 702639, at *4 (V.I. Feb. 24, 2014) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011)).

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 6

arbitration agreement, consideration exists where both parties agree to be bound by the arbitration." *Id.*

### 4. Unconscionability

Unconscionability is a generally recognized contract defense that may be used to set aside an arbitration agreement. *Plaskett v. Bechtel Intern., Inc.,* 243 F. Supp. 2d 334, 339 (D.V.I. 2003) (citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). The doctrine of unconscionability involves both "procedural" and "substantive" elements. *Alexander v. Anthony Intern., L.P.,* 341 F.3d 256, 265 (3d Cir. 2003) (citations omitted). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement." *Id.* This element is normally satisfied where the contract is one of adhesion, *i.e.,* "one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Id.* (quotations omitted). Substantive unconscionability "refers to terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id.* To find that an agreement is unconscionable, both elements must be proven: first, that the contractual terms are unreasonably favorable to the drafter and (2) that there is no meaningful choice on the part of the other party regarding acceptance of the provision." *Id.* at 265-66. The party seeking to invalidate the arbitration clause generally bears the burden of proving that the contract or provision of the contract is unconscionable. *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 181 (3d. Cir. 1999). If the court determines that a term of a contract is unconscionable, it

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 7

may "refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Alejandro v. L.S. Holding, Inc.,* 310 F. Supp. 2d 745, 748 (D.V.I. 2004) (citing Restatement (Second) of Contracts § 208).

### 5.   Stay of Proceedings

"'The Supreme Court has recognized that district courts have broad discretion to manage their dockets, including the power to grant a stay of proceedings.'" *InterMetro Indus. Corp. v. Enovate Medical, LLC,* 3:13-CV-02854, 2017 WL 901100, at *2 (M.D. Pa. Mar. 7, 2017) (quoting *Proctor & Gamble Co. v. Kraft Foods Glob., Inc.,* 549 F.3d 842, 848-49 (Fed. Cir. 2008)). When determining whether to grant a stay, "courts should consider (1) the length of the requested stay; (2) the 'hardship or inequity' that the movant would face in going forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; (4) whether a stay will simplify issues and promote judicial economy." *Structural Grp., Inc. v. Liberty Mut. Ins. Co.,* Civil Action No. 1:07-cv-01793, 2008 WL 4616843, at *5 (M.D. Pa. Oct. 16, 2008) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936)).

### III.   DISCUSSION

Here, the arbitration agreement is enforceable. It involves interstate commerce in that Plaintiff is a New York citizen who was a paid guest at The Buccaneer, which has Virgin

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 8

Islands citizenship.  Further, the agreement is valid, because Plaintiff signed it as a condition of her stay at the hotel.[2]

Although at first glance the arbitration agreement appears to present an open-and-shut case regarding its enforceability, a deeper dive into it—and further consideration of Plaintiff's arguments—necessitates a more comprehensive explanation of why the Court is compelling arbitration.  The contract that was attached to Defendant's motion is highly unusual in that, while it purports to be an agreement between Plaintiff and Defendant, it is labelled as "*American Airlines* Crew Sign In Sheet."  Although American Airlines is not a party to this case, Plaintiff has submitted an affidavit, in which she indicated that "[w]hen [she] checked into the hotel [she] was asked to sign an American Airlines Crew Sign In Sheet for the purposes of documenting [her] stay at the hotel so that American Airlines would pay the Buccaneer for [her] accommodations."  (ECF No. 18-1 at 2).  Further, Plaintiff stated that "[n]o one ever mentioned anything about an arbitration agreement."  *Id.*  To this extent, Plaintiff argues:

> [I]t looks as tho[ugh] the arbitration language is buried in fine print that has been lifted from a different document and dropped into the American Airlines

---

[2] The agreement specifically states that "[a]ny dispute, controversy or claim of any kind whatsoever … including also all disputes about the *validity of this arbitration clause* … shall be settled by a mutually agreed to local arbitrator."  (ECF No. 7-1) (emphasis added).  Last year, in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 525, 528 (2019), the Supreme Court said that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."  The arbitration clause here falls squarely within the dictates of *Henry Schein*'s directive, and, as such, the arbitrator must decide the arbitrability of Plaintiff's claim.  Alternatively, the Court notes that the agreement covers the dispute at issue, because the broad language of the arbitration clause covers all disputes between Plaintiff and Defendant arising from Plaintiff's stay on the hotel property.  The agreement even goes so far as to specifically enumerate that it covers "torts allegedly resulting in injuries while on the hotel property," which is the very subject matter of this action.

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 9

> Sign In Sheet, cut and paste style. In fact, there is no way to determine when this language was added to the document, or if this Defendant's document or an American Airlines document[.] This is consistent with Ms. Gore's denial of having ever signed an arbitration agreement or agreeing in any fashion to arbitrate anything against Defendant.

(ECF No. 13 at 5).

While this argument captures some of the unfamiliar elements of this contract, Plaintiff has not put forth any allegations in her opposition or affidavit to suggest that she did not know what she was signing or that the document now offered by Defendant is different than the one she signed. Moreover, in her own brief, she states that "[s]he was an employee of American Airlines, *who had a contract with Defendant* to provide lodging for its employees that overnight on St. Croix as part of their job requirements." (ECF No. 13 at 1) (emphasis added). Although the Court would have preferred to see some indication from Defendant regarding the existence and terms of that contract, it presumably outlines the terms as memorialized in the Sign-In Sheet. As such, the Court can safely infer that this document, even if a little confusing, is a structured component of the agreement between Defendant and American Airlines or is at least sufficiently intertwined with such agreement.[3]

---

[3] Regarding consideration, even though the parties have not yet engaged in any fact-finding, the Court presumes, as argued by Defendant, that Plaintiff "used and benefit[t]ed from The Buccaneer's services, whether paid or unpaid[.]" (*See* ECF No. 19 at 3). Defendant cites "lodging, meals, [and] facilities" as potential benefits of Plaintiff's stay at the hotel. While the Court does not want to speculate as to what Plaintiff may or may not have done while at the hotel, it is an almost inescapable fact that a benefit(s) was conferred upon her simply by virtue of her stay there. *See Twin Cities Management, LLC v. Igbal*, No. A-5821-17T1, 2020 WL 1943232, at *12 (N.J. Super. Ct. App. Div. Apr. 23, 2020) ("[C]onsideration need not be significant; whatever consideration the parties agree to is significant.").

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 10

The Court respects Plaintiff's understanding that she thought she was merely signing an attendance sheet. However, even if nobody informed her about the arbitration agreement, it covers approximately half of the page and was there for her to read on her own. Yet, Plaintiff argues that 1) the conditions under which she signed the contract, and 2) the terms of the arbitration clause itself are unconscionable. Plaintiff lays out her argument as follows:

> Ms. Gore arrived at Defendant's hotel at 11:00 p.m. after a full day of working as a flight attendant. She was presented a document entitled "American Airlines Crew Sign In Sheet."
>
> All of the information that was preprinted and typed in on the sheet at or above her signature had nothing to do with her employment. There is absolutely nothing at or above her signature that mentions arbitration at all. Thus, the notice she was given by Defendant that she was signing into a document related to her employment, not an arbitration agreement.
>
> Once she was signed in there was no reason for her to read anything that was printed below her signature as it was not relevant to the information she was to provide which only included her name, signature, wake up call, flight arrival time, flight number, van departure time, flight departure time and departure flight number. Defendant's efforts to sneak in arbitration provisions below her signature in tiny font, that seems to have been cut and pasted into this document, after luring her to believe this document only related to her employment, is on its face unconscionable.

(ECF No. 13 at 6-7).

Here, none of Plaintiff's arguments—or her affidavit—indicate that she did not remember signing this document or that the signature on the document is not hers. Although she states that she arrived at the hotel at a late hour, there is no indication that she was given insufficient time to read the document or otherwise lacked the capacity to harness an

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 11

understanding of its terms.  While this document does appear to be a bit of a patchwork product, there is no support for Plaintiff's argument that the arbitration clause was "sn[uc]k in" or that she was "lur[ed] to believe this document only related to her employment."

Further, to the extent that this document is an adhesion contract, there must also be some evidence that the terms of the contract are overly one-sided.  To this end, Plaintiff draws attention to the fact that the font for the arbitration clause was smaller than on the rest of the page.  (ECF No. 13 at 7).  However, this was not an instance where a microscopic arbitration clause was hidden in a 100-page-plus document.  Rather, the arbitration clause was presented point blank on the sole page that Plaintiff signed, and, as much as the font of the arbitration clause is a little smaller than the text in the rest of the document, the difference in size might have made all the more reason for Plaintiff to take note of it.

Plaintiff also makes issue of the fee-splitting provision in the arbitration clause and argues that this arrangement would result in greater expenses for her than if the case were to remain in court.  (ECF No. 13 at 7).  A party seeking to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive ... bears the burden of showing the likelihood of incurring such costs."  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).  The Third Circuit has "consistently held that to meet this burden, a plaintiff must (1) come forward with some evidence to show the projected fees that would apply to their specific arbitrations, and (2) show the party's inability to pay those costs."  *Hall v. Treasure Bay V.I. Corp.*, 371 Fed. App'x 311, 313 (3d Cir. 2010).  "Thus, a party seeking to

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 12

declare a provision awarding arbitration costs unenforceable must proffer some credible and substantiated evidence of that party's financial situation as well as the specific costs of arbitration." *Id.* Plaintiff has not indicated—in her affidavit or otherwise—that she is unable to afford these potential costs. In fact, Plaintiff makes no mention of her financial conditions at all. Additionally, she has not offered any explanation as to how arbitration would be more costly for her—even if it is ultimately possible. In short, the information provided by Plaintiff is not sufficient for the Court to determine that arbitration would be prohibitively expensive for her.[4]

In sum, the Court notes that, while this document is not a great model for parties seeking to invoke arbitration clauses, it is nevertheless enforceable against Plaintiff. The Court cannot identify unfairness in this document—either in the procurement of Plaintiff's signature or in its terms—egregious enough to render it unconscionable.

Having determined that Defendant is entitled to enforce the arbitration clause, the Court will issue a stay as to the claim subject to that arbitration.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED**:

---

[4] Plaintiff also argues that the portion of the arbitration clause that states the arbitrator's decision will be "conclusive and binding" prohibits judicial review of the arbitrator's award. (ECF No. 13 at 7-8). While it is true that there are only limited circumstances under which courts can review arbitration awards, Plaintiff has not put forth any argument that this clause forecloses Plaintiff's right to argue one of those exceptional circumstances. Further, Plaintiff states that the arbitration agreement covers only her claims against Defendant but not the other way around. *Id.* at 7. However, the language of the arbitration states it covers all claims "*between* the undersigned and The Buccaneer" and thus contradicts Plaintiff's assertion. (emphasis added).

*Tonia Gore v. The Buccaneer, Inc.*
1:20-cv-00011
Memorandum Opinion and Order
Page 13

1. Defendant's "Motion To Compel Arbitration And Stay Proceedings" (ECF No. 6) is

   **GRANTED**.

2. The case is **STAYED** pending completion of arbitration.

3. The parties are to file with the Court a status report concerning the arbitration

   process no later than **November 15, 2020**.


                                          ENTER:

Dated: May 15, 2020                       /s/ George W. Cannon, Jr.
                                          GEORGE W. CANNON, JR.
                                          MAGISTRATE JUDGE